1  **HANNI M. FAKHOURY**
   California Bar No. 252629
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, California 92101-5008
   Telephone: (619) 234-8467
4  Hanni_Fakhoury@fd.org

5  Attorneys for Mr. Sandoval-Morales

6

7

8                        UNITED STATES DISTRICT COURT

9                     SOUTHERN DISTRICT OF CALIFORNIA

10                     **(HONORABLE MARILYN L. HUFF)**

11  UNITED STATES OF AMERICA,          )    CASE NO.: 08-CR-0206-H
                                       )
12              Plaintiff,             )
                                       )    STATEMENT OF FACTS AND
13  v.                                 )    MEMORANDUM OF POINTS AND
                                       )    AUTHORITIES IN SUPPORT OF MOTIONS
14  **RUFINO SANDOVAL-MORALES**,       )
                                       )
15              Defendant.             )
                                       )
16  _____)

17                                 **I.**

18                        **STATEMENT OF FACTS**[1]

19        On January 7, 2009, Border Patrol Agent Perez was patrolling seven miles west of Calexico,

20  California. He encountered six individuals, including Mr. Sandoval-Morales. Agent Perez questioned the

21  individuals as to their citizenship and immigration status and all of the individuals, including Mr. Sandoval-

22  Morales, allegedly admitted they were citizens of Mexico and in the United States illegally. All the

23  individuals were then placed under arrest. Later, Mr. Sandoval-Morales was given <u>Miranda</u> warnings and

24  was interrogated by border patrol agents again.

25        On January 23, 2008, Mr. Sandoval-Morales was indicted by the January 2007 Grand Jury for being

26  a deported alien found in the United States, in violation of 8 U.S.C. § 1326.

27  _____

28        [1] The following facts are based on the probable cause statement attached to the complaint. Mr.
    Sandoval-Morales does not stipulate to its accuracy and reserves the right to challenge it at future
    proceedings.

1

## II.

2

## <u>MOTION TO COMPEL DISCOVERY AND PRESERVE EVIDENCE</u>

3        Mr. Sandoval-Morales moves for production of the following discovery. This request is not limited

4    to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the

5    custody, control, care, or knowledge of any "closely related investigative [or other] agencies." *See*

6    <u>United States v. Bryan</u>, 868 F.2d 1032 (9th Cir. 1989). Specifically, Mr. Sandoval-Morales moves for the

7    production of the following evidence:

8        1. **<u>Mr. Sandoval-Morales's Statements.</u>** Mr. Sandoval-Morales requests the government disclose

9    any and all written, recorded and oral statements made by him, as well any written summaries of his oral

10   statements contained in the handwritten notes of any Government agent. Fed. R. Crim. P. 16(a)(1)(A). The

11   Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the Government must

12   reveal <u>all</u> of Mr. Sandoval-Morales's statements, whether written or oral, regardless of whether the

13   Government intends to make any use of those statements. **Mr. Sandoval-Morales specifically requests all**

14   **audio and videotaped copies of his statements and any rough notes taken pertaining to the substance**

15   **of his statements. Mr. Sandoval-Morales requests that the government provide him with a court-**

16   **certified transcript of the compact disc depicting Mr. Sandoval-Morales's post-arrest interrogation**

17   **by the agents. Furthermore, pursuant to Fed. R. Crim. P. 16(a)(1)(B)(i), Mr. Sandoval-Morales**

18   **requests copies of the audio tapes of any taped telephone call made while he was or is in custody.**

19       2. **<u>Arrest Reports, Notes and Dispatch Tapes.</u>** Mr. Sandoval-Morales requests the Government

20   to turn over all arrest reports, notes, dispatch or any other tapes and TECS records that relate to the

21   circumstances surrounding his arrest or any questioning. This request includes, but is not limited to, any

22   rough notes, records, reports, transcripts or other documents in which statements of Mr. Sandoval-Morales

23   or any other discoverable material is contained. Such material is discoverable under Fed. R. Crim. P.

24   16(a)(1)(A) and <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). The Government must produce arrest reports,

25   investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution

26   reports pertaining to Mr. Sandoval-Morales. <u>See</u> Fed. R. Crim. P. 16(a)(1)(B) and (c), Fed. R. Crim. P. 12(i)

27   and 26.2.

28   //

3.  **Mr. Sandoval-Morales's "A-File."  Mr. Sandoval-Morales requests an opportunity for his attorney and/or a defense investigator to inspect and copy the entire contents of his immigration "A-File" at a time mutually convenient to both parties.**

4.  **Brady Material**.  Mr. Sandoval-Morales requests all documents, statements, agents' reports, and tangible evidence favorable to Mr. Sandoval-Morales on the issue of guilt and/or which affects the credibility of the Government's witnesses and the Government's case.  Under Brady, impeachment as well as exculpatory evidence falls within the definition of evidence favorable to the accused.  United States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976).  Further, Brady requires the government disclose any information that may result in a lower sentence under the sentencing guidelines, notwithstanding its advisory nature, because it is exculpatory and/or mitigating evidence.

5.  **Mr. Sandoval-Morales's Prior Record.**  Mr. Sandoval-Morales requests disclosure of his prior criminal record. Fed. R. Crim. P. 16(a)(1)(B).

6.  **Any Proposed 404(b) Evidence.**  Evidence of prior similar acts is discoverable under Fed. R. Crim. P. 16(a)(1)(c) and Fed. R. Evid. 404(b) and 609.  In addition, under Fed. R. Evid. 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature . . . ." of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial.  Mr. Sandoval-Morales requests the government "articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982) (emphasis added; internal citations omitted); see also United States v. Brooke, 4 F.3d 1480, 1483 (9th Cir. 1993) (reaffirming Mehrmanesh and reversing convictions). Mr. Sandoval-Morales requests **three weeks notice before trial** to give the defense time to adequately investigate and prepare for trial.

7.  **Evidence Seized.**  Mr. Sandoval-Morales requests production of evidence seized as a result of any search, either warrantless or with a warrant. Fed. R. Crim. P. 16(a)(1)(c).

8.  **Request for Preservation of Evidence.**  Mr. Sandoval-Morales specifically requests the preservation of all physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the Government and which relates to the arrest or the events leading to the arrest in this

//

08CR0206-H

1    case. This request includes, but is not limited to, the results of any fingerprint analysis, Mr. Sandoval-

2    Morales's personal effects, and any evidence seized from Mr. Sandoval-Morales.

3        9. **Tangible Objects.** Mr. Sandoval-Morales requests the opportunity to inspect, copy, and test, as

4    necessary, all other documents and tangible objects, including photographs, books, papers, documents,

5    fingerprint analyses, or copies of portions thereof, which are material to the defense, intended for use in the

6    Government's case-in-chief, or were obtained from or belong to Mr. Sandoval-Morales. Fed. R. Crim. P.

7    16(a)(1)(c). **Specifically, Mr. Sandoval-Morales requests copies of the audio tapes of his alleged prior**

8    **deportations or removals.**

9        10. **Expert Witnesses.** Mr. Sandoval-Morales requests the name, qualifications, and a written

10   summary of the testimony of any person that the Government intends to call as an expert witness during its

11   case in chief. Fed. R. Crim. P. 16(a)(1)(E). The defense requests the notice of expert testimony be provided

12   a minimum of two weeks prior to trial so the defense can properly prepare to address and respond to this

13   testimony, including obtaining its own expert and/or investigating the opinions, credentials of the

14   Government's expert and a hearing in advance of trial to determine the admissibility of qualifications of any

15   expert. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999) (trial judge is "gatekeeper" and

16   must determine, reliability and relevancy of expert testimony and such determinations may require "special

17   briefing or other proceedings").

18       11. **Scientific and Other Information.** Mr. Sandoval-Morales requests the results of any scientific

19   or other tests or examinations conducted by any Government agency or their subcontractors in connection

20   with this case. See Fed. R. Crim. P. 16(a)(1)(D).

21       12. ***Henthorn* Material.** Mr. Sandoval-Morales requests that the Assistant United States Attorney

22   ("AUSA") assigned to this case oversee (not personally conduct) a review of all personnel files of each agent

23   involved in the present case for impeachment material. See Kyles v. Whitley, 514 U.S. 419 (1995) (holding

24   that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on

25   the Government's behalf in the case, including the police"); United States v. Henthorn, 931 F.2d 29 (9th Cir.

26   1991); United States v. Jennings, 960 F.2d 1488 (9th Cir. 1992) (AUSA may not be ordered to personally

27   conduct examination of records; appropriate Government agency may review files and notify AUSA of

28   //

contents as long as AUSA makes the determination regarding material to be disclosed); <u>United States v.</u>

<u>Herring</u>, 83 F.3d 1120 (9th Cir. 1996) (accord).

13. **Evidence of Bias or Motive to Lie.**  Mr. Sandoval-Morales requests any evidence that any prospective Government witness is biased or prejudiced against Mr. Sandoval-Morales, or has a motive to falsify or distort his or her testimony.

14. **Impeachment Evidence.**  Mr. Sandoval-Morales requests any evidence that any prospective Government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to Mr. Sandoval-Morales.  <u>See</u> Fed. R. Evid. 608, 609 and 613; <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

15. **Evidence of Criminal Investigation of Any Government Witness.**  Mr. Sandoval-Morales requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.

16. **Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling.**  Mr. Sandoval-Morales requests any evidence, including any medical or psychiatric report or evaluation, that tends to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and any evidence that a witness has ever used narcotics or other controlled substances, or has ever been an alcoholic.

17. **Witness Addresses.**  Mr. Sandoval-Morales requests the name and last known address of each prospective Government witness.  Mr. Sandoval-Morales also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will not be called as a Government witness.

18. **Name of Witnesses Favorable to Mr. Sandoval-Morales.**  Mr. Sandoval-Morales requests the name of any witness who made an arguably favorable statement concerning Mr. Sandoval-Morales or who could not identify him or who was unsure of his identity, or participation in the crime charged.

19. **Statements Relevant to the Defense.**  Mr. Sandoval-Morales requests disclosure of any statement relevant to any possible defense or contention that he might assert in his defense.

20. **Giglio Information  & Agreements Between the Government and Witnesses.**  Pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972), Mr. Sandoval-Morales requests all statements and/or promises,

express or implied, made to any witness, in exchange for their testimony in this case, and all other information which could be used for impeachment. Mr. Sandoval-Morales also requests discovery regarding any other express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, or any other kind of agreement, promise, or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective Government witness and the Government (federal, state and/or local). This request also includes any discussion with a potential witness about or advice concerning any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed, and specifically includes any discussion with a potential witness regarding that witness' immigration status and/or any affect that the witness' statements or lack thereof might have on that status, including the granting or revoking of such immigration status or any other immigration status, including but not limited to citizenship, nationality, a green card, border crossing card, parole letter, or permission to remain in the United States.

21. **Informants and Cooperating Witnesses.** Mr. Sandoval-Morales requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Mr. Sandoval-Morales. The Government must disclose the informant's identity and location, as well as the existence of any other percipient witness unknown or unknowable to the defense. Roviaro v. United States, 353 U.S. 53, 61-62 (1957). The Government must disclose any information derived from informants which exculpates or tends to exculpate Mr. Sandoval-Morales. Brady v. Maryland, 373 U.S. 83 (1963)

22. **Bias by Informants or Cooperating Witnesses.** Mr.Sandoval-Morales requests disclosure of any information indicating bias on the part of any informant or cooperating witness. Giglio v. United States, 405 U.S. 150 (1972). Such information includes, but is not limited to, any inducements, favors, payments or threats that were made to the witness in order to secure cooperation with the authorities.

23. **Jencks Act Material.** Mr. Sandoval-Morales requests production in advance of trial of all material, including dispatch tapes, which the Government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500. Advance production will avoid the possibility of delay at trial to allow Mr. Sandoval-Morales to investigate the Jencks material. A verbal acknowledgment that "rough" notes constitute an

1    accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under

2    § 3500(e)(1).  Campbell v. United States, 373 U.S. 487, 490-92 (1963); see United States v. Boshell, 952

3    F.2d 1101 (9th Cir. 1991) (agent's interview notes reviewed with interviewee subject to Jencks Act).

4      24.  **Residual Request.**  Mr. Sandoval-Morales intends by this discovery motion to invoke his rights

5    to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the

6    Constitution and laws of the United States.  Mr. Sandoval-Morales requests that the Government provide

7    him and his attorney with the above requested material sufficiently in advance of trial to avoid unnecessary

8    delay prior to cross-examination.

9    **III.**

10   **THIS COURT SHOULD DISMISS THE INDICTMENT FOR ITS FAILURE TO ALLEGE
ESSENTIAL ELEMENTS OF THE OFFENSE**

11

12     The Fifth Amendment requires that "[n]o person shall be held to answer for a capital, or otherwise

13   infamous crime, unless on a presentment or indictment of a Grand Jury . . ."  Consistent with this

14   Constitutional requirement, the Supreme Court has held that an indictment must "fully, directly, and

15   expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense

16   intended to be punished."  United States v. Carll, 105 U.S. 611, 612-13 (1881).  It is black letter law that an

17   indictment that does not allege an element of an offense, even an implied element, is defective, and should

18   be dismissed.  See, e.g., Russell v. United States, 369 U.S. 749, 769-72 (1962); Stirone v. United States, 361

19   U.S. 212, 218-19 (1960); United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999); United States v.

20   Keith, 605 F.2d 462, 464 (9th Cir. 1979).

21     The indictment charges Mr. Sandoval-Morales with being a previously-deported alien found in the

22   United States in violation of 8 U.S.C. § 1326.  Yet the indictment fails to allege all of the elements necessary

23   to convict Mr. Sandoval-Morales of violating 8 U.S.C. § 1326. Specifically, the indictment fails to allege

24   that Mr. Sandoval-Morales (1) knew he was in the United States; (2) failed to undergo inspection and

25   admission by an immigration officer at the nearest inspection point; and (3) voluntarily entered the

26   United States.  Since it fails to allege all the elements of the offense, it must be dismissed. See e.g., Nyrienda

27   v. I.N.S., 279 F.3d 620 (8th Cir. 2002) (setting forth the components of an entry under immigration law);

28   see also United States v. Pernillo-Fuentes, 252 F.3d 1030 (9th Cir. 2001);  United States v. Du Bo, 186 F.3d

1  1177, 1179 (9th Cir. 1999). However, since these issues were decided against Mr. Sandoval-Morales in

2  United States v. Rivera-Sillas,  376 F.3d 887 (9th Cir. 2004), they are not briefed in this motion, but are

3  raised to preserve them for further appeal.  Mr. Sandoval-Morales is willing to submit further briefing on

4  these issues to this Court if so ordered.

5       Additionally, the 9th Circuit has recently held that an indictment alleging a violation of  8 U.S.C.

6  §1326 must allege both "the dates of a previous felony conviction and of a previous removal from the United

7  States, subsequent to that conviction." United States v. Salazar-Lopez, 506 F.3d 748, 749-750 (9th Cir.

8  2007). In Salazar-Lopez, the indictment charged the defendant with a violation of § 1326 but "did not allege

9  that Salazar-Lopez had been previously removed subsequent to a felony conviction, nor did it allege a

10  specific date for Salazar-Lopez's prior removal." Id. at 750. The 9th Circuit unequivocally held that the

11  indictment "required" an allegation that the defendant "had been removed on a specific, post-conviction

12  date." Id. at 751. Here, the indictment fails to allege that Mr. Sandoval-Morales "had been removed on a

13  specific, post conviction date." Instead, the indictment only says that Mr. Sandoval-Morales "was removed

14  from the United States subsequent to March 21, 2006."  The indictment completely fails to mention Mr.

15  Sandoval-Morales's prior conviction and a specific date of deportation after that conviction. This is

16  insufficient under Salazar-Lopez  and therefore the indictment must be dismissed.

17                                             **IV.**

18  **THE STATEMENTS MUST BE SUPPRESSED UNDER MIRANDA AND A HEARING AS TO**
    **THE VOLUNTARINESS OF THE STATEMENTS MUST BE HELD**
19

20  **A.    The Government Must Demonstrate That Mr. Sandoval-Morales' Field Statements To Agent**
        **Mendoza Were Given After He Knowingly And Voluntarily Waived His Miranda Warnings**
21

22        **1.    Miranda Warnings Must Precede Custodial Interrogation**

23        It is well known that before a defendant in custody can be questioned about alleged criminal activity,

24  he must be given warnings under Miranda v. Arizona,  384 U.S. 436 (1966). Miranda explained that "when

25  the person being interrogated is 'in custody at the station or otherwise deprived of his freedom of action in

26  any significant way,'" warnings are required. Orozco v. Texas, 394 U.S. 324, 327(1969) (quoting Miranda,

27  384 U.S. at 477).  A suspect is in custody if the actions of the interrogating officers and the surrounding

28  circumstances, fairly construed, would reasonably have led him to believe that he could not freely leave.

1   See United States v. Lee, 699 F.2d 466, 468 (9th Cir. 1982); United States v. Bekowies, 432 F.2d 8, 12 (9th

2   Cir. 1970). Although questions regarding routine biographical information usually do not trigger the

3   safeguard of Miranda, the exception does not apply "where the elicitation of information regarding

4   immigration status is reasonably likely to inculpate the [suspect]." United States v. Gonzalez-Sandoval, 894

5   F.2d 1043, 1046 (9th Cir. 1990). In fact, because of the close relationship between civil and criminal

6   immigration investigations, "[c]ivil as well as criminal interrogation of in-custody defendants by INS

7   investigators should generally be accompanied by the Miranda warnings." United States v. Mata-Abundiz,

8   717 F.2d 1277, 1279 (9th Cir. 1983).

9        In determining whether an individual is in custody for purposes of Miranda, the 9th Circuit has

10   instructed courts to consider "(1) the language used to summon the individual; (2) the extent to which the

11   defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the

12   duration of the detention; and (5) the degree of pressure applied to detain the individual." United States v.

13   Kim, 292 F.3d 971, 973 (9th Cir. 2002) (citations omitted). The same considerations apply in the context

14   of custody at the border. See United States v. Estrada-Lucas, 651 F.2d 1261, 1265 (9th Cir. 1980).

15   Furthermore, questions by agents implying a person is suspected of criminal activity can give rise to a

16   reasonable belief that one is not free to leave and thus turn an encounter with law enforcement into custody

17   for purposes of Miranda. United States v. Chavez-Valenzuela, 268 F.3d 719, 725 (9th Cir. 2001). A person

18   does not need to be physically restrained to be in "custody." The 9th Circuit has found that an individual

19   questioned out in an open field, neither handcuffed or told he was under arrest, to be in custody for purposes

20   of Miranda. United States v. Beraun-Panez, 812 F.2d 578, 579 (1987). In that case, the court held that

21   "[a]lthough not physically bound, Beraun-Panez was subjected to psychological restraints just as binding."

22   Id. at 580.

23        Mr. Sandoval-Morales was clearly in custody. Although the police report does not contain the

24   specific language used by the officers to speak to Mr. Sandoval-Morales, the report explains that Agent

25   Perez identified himself as a Border Patrol Agent. Considered with the fact that Agent Mendoza was likely

26   in uniform and carrying a gun in an isolated area near the Mexican border, it is clear that Mr. Sandoval-

27   Morales knew he was in the custody of law enforcement. Further, the defendant was confronted with

28   evidence of his guilt immediately as Agent Perez began questioning Mr. Sandoval-Morales about his

1    citizenship and nationality, the precise elements of the crime he is charged with - 8 U.S.C. § 1326. The

2    physical surrounding of the interrogation - an open field close to the Mexican border - considered with the

3    questioning by a clearly identified Border Patrol agent demonstrates that Mr. Sandoval-Morales was

4    suspected of criminal activity and thus in custody. See Chavez-Valenzuela, 268 F.3d at 725. Because Mr.

5    Sandoval-Morales was in custody when he was questioned, any questioning must have been preceded by

6    Miranda warnings.

7       **2.    The Government Must Prove That Any Waiver Of Miranda Rights Was Voluntary,
             Knowing and Intelligent**

8

9       Based on the discovery provided to the defense, Mr. Sandoval-Morales' field interrogation was not

10   preceded by any Miranda warnings and yet a statement was taken. As the Supreme Court has made clear,

11   when "interrogation continues without the presence of an attorney, and a statement is taken, a *heavy* burden

12   rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege

13   against self-incrimination and his right to retained or appointed counsel." Miranda, 384 U.S. at 475

14   (emphasis added) (citation omitted).  It is undisputed that any waiver of the right to remain silent and the

15   right to counsel must be made knowingly, intelligently, and voluntarily in order to be effective. Schneckloth

16   v. Bustamonte, 412 U.S. 218 (1973).  The standard of proof for a waiver of this constitutional right is in the

17   Supreme Court's own words "high." Miranda, 384 U.S. at 475; see also United States v. Heldt, 745 F.2d

18   1275, 1277 (9th Cir. 1984) (the burden on the government is "great" and the court "must indulge every

19   reasonable presumption against waiver of fundamental constitutional rights").

20      The validity of the waiver depends upon the particular facts and circumstances surrounding the case,

21   including the background, experience, and conduct of the accused.  Edwards v. Arizona, 451 U.S. 477

22   (1981); Johnson v. Zerbst, 304 U.S. 458, 464 (1938); see also Heldt, 745 F.2d at 1277. The Ninth Circuit

23   has explained that a Miranda waiver must be both (1) voluntary, and (2) knowing and intelligent." Derrick

24   v. Peterson, 924 F.2d 813, 820 (9th Cir. 1990), cert. denied, 502 U.S. 853 (1991).  The voluntariness prong

25   of this analysis "is equivalent to the voluntariness inquiry under the [Fifth] Amendment . . . ." Id.  However,

26   the second prong, requiring that the waiver be "knowing and intelligent," requires an inquiry into whether

27   "the waiver [was] made with a full awareness both of the nature of the right being abandoned and the

28   consequences of the decision to abandon it." Id. at 820-21 (quoting Colorado v. Spring, 479 U.S. 564, 573

1  (1987)). This Court must therefore determine whether "the requisite level of comprehension" existed before

2  any purported waiver may be upheld. <u>Derrick</u>, 924 F.3d at 820. Thus, "[o]nly if the 'totality of the

3  circumstances surrounding the interrogation' reveal *both* an uncoerced choice *and* the requisite level of

4  comprehension may a court properly conclude that the <u>Miranda</u> rights have been waived." <u>Id.</u> (quoting

5  <u>Spring</u>, 479 U.S. at 573) (emphasis in original) (citations omitted).

6      Therefore, unless the government demonstrates that the agents gave Mr. Sandoval-Morales <u>Miranda</u>

7  warnings before he made a statement and that he voluntarily, knowingly and intelligently waived those

8  rights before giving a statement, no evidence obtained as a result of the interrogation can be used against

9  him. <u>Miranda</u>, 384 U.S. at 479. Since Mr. Sandoval-Morales was placed into Border Patrol custody and was

10 immediately questioned directly about his citizenship and immigration status without any <u>Miranda</u> warnings,

11 any and all statements must be suppressed. <u>See United States v. Estrada-Lucas</u>, 651 F.2d 1261, 1265 (9th

12 Cir. 1980).

13      **3.     The Second Interrogation Of Mr. Sandoval-Morales Was A Deliberate Two Step
        Interrogation In Violation Of <u>Seibert</u> and <u>Williams</u> And Therefore The Statements**

14      **Must Be Suppressed**

15      After Agent Mendoza determined in the field that Mr. Sandoval-Morales had no legal right to be in

16 the United States, he was interrogated again after being given <u>Miranda</u> warnings and questioned again about

17 his nationality and citizenship. This second interrogation must also be suppressed because it is a deliberate

18 two step interrogation, designed to undermine the effectiveness of <u>Miranda</u> warnings and therefore were

19 taken in violation of <u>Missouri v. Seibert</u>, 542 U.S. 600 (2004).

20      In <u>Seibert</u>, a majority of the Supreme Court disapproved of the deliberate police tactic of first

21 questioning suspects without <u>Miranda</u> warnings until a suspect confessed and then subsequently giving

22 <u>Miranda</u> warnings and questioning the suspect again. This tactic in essence elicited a repetition of the pre-

23 <u>Miranda</u> confession already given. <u>Seibert</u>, 542 U.S. at 609-611. The Court found that the "manifest

24 purpose" of this tactic was "to get a confession the suspect would not make if he understood his rights at the

25 outset." <u>Id.</u> at 613. Because these tactics deprived the delayed <u>Miranda</u> warnings of any substance,

26 statements obtained in this manner are deemed inadmissible. <u>Id.</u> at 617.

27      The first Ninth Circuit case to interpret <u>Seibert</u>, <u>United States v. Williams</u>, 435 F.3d 1148, 1155 (9th

28 Cir. 2006), explained that because <u>Seibert</u> depended on Justice Kennedy's concurring opinion to form a

majority, Seibert's holding had to be read on the narrowest grounds on which the plurality and Justice Kennedy agreed. Williams, 435 F.3d at 1157 (citing Marks v. United States, 430 U.S. 188, 193 (1977)). The Ninth Circuit found this narrowest ground to be that Seibert requires suppression of statements obtained in a deliberate two step interrogation when "law enforcement officers *deliberately* employ a two-step interrogation to obtain a confession and where separations of time and circumstance and additional curative warnings are absent or fail to apprise a reasonable person in the suspect's shoes of his rights." Williams, 435 F.3d at 1158 (emphasis in original). In short, Williams requires two questions: (1) whether the officer's withholding of warnings was deliberate; and (2) if deliberate, whether any curative measures were effective to apprise the suspect of his rights. Id. at 1158-1161.

In determining whether the officer's actions were deliberate, courts should consider subjective evidence that law enforcement deliberately used a two step tactic to extract statements. Id. at 1159. Typically, however, courts will have to rely on objective evidence and "'facts apart from intent that show the question-first tactic at work.'" Id. (quoting Seibert, 542 U.S. at 616-1, n.6). Most importantly, Williams noted that there is "rarely, if ever, a legitimate reason to delay giving a Miranda warning until after the suspect has confessed. Instead, the most plausible reason for the delay is an *illegitimate* one, which is the interrogator's desire to weaken the warning's effectiveness." Id. at 1159 (emphasis in original) (footnote omitted).

As for the effectiveness of curative measures, the Ninth Circuit detailed a list of objective factors for courts to consider, including (1) the timing, setting, and completeness of the pre-warning interrogation; (2) the continuity of personnel in the two interrogations; (3) the overlapping of content between the two interrogations. Williams, 435 F.3d at 1159 (citing Seibert, 542 U.S. at 615). Additionally, another factor to consider is the degree to which the second interrogation was treated as a continuation of the first. Williams, 435 F.3d at 1155 (citing Seibert, 542 U.S. at 615).

Turning to the facts here, both prongs of Williams are met. By withholding Miranda warnings until after the Border Patrol agents arrested Mr. Sandoval-Morales, it is clear the officers were intending "to get a confession the suspect would not make if he understood his rights at the outset." Seibert, 542 U.S. at 613. By questioning Mr. Sandoval-Morales about his nationality and citizenship in the field without any Miranda warnings, the agents were able to get Mr. Sandoval-Morales to give incriminating statements without having

1   to worry about him exercising his right to remain silent or demanding the presence of the lawyer. Clearly,

2   the deliberateness prong of <u>Williams</u> is met. As for the effectiveness of any curative measures, the factors

3   detailed in <u>Williams</u> all point towards a finding that the measures were ineffective to apprise Mr. Sandoval-

4   Morales of his rights. The second interrogation- which was preceded by <u>Miranda</u> warnings - was after Mr.

5   Sandoval-Morales had been arrested in the field. Although a different Border Patrol agent conducted the

6   interview at the Campo station, the content of the two interrogations covered the same exact topic - Mr.

7   Sandoval-Morales nationality and citizenship. Since the midstream <u>Miranda</u> warning was ineffective, the

8   statements must be suppressed under <u>Miranda</u>, <u>Seibert</u> and <u>Williams</u>.

9   **B.    The Government Must Prove That Mr. Sandoval-Morales' Statements Were Voluntary**

10          **1.    A Statement Must Be Voluntary To Comply With The Due Process Clause**

11          Even if a statement is preceded by <u>Miranda</u> warnings, the due process clause prohibits the use of

12  involuntary statements. <u>Arizona v. Fulminante</u>, 499 U.S. 279 (1991); <u>Jackson v. Denno</u>, 378 U.S. 368, 387

13  (1964). The government bears the burden of proving by a preponderance of the evidence that any confession

14  or statements were voluntarily made by a criminal defendant. <u>Lego v. Twomey</u>, 404 U.S. 477, 483 (1972).

15  A statement is voluntary if it is the product of a rational intellect and free will. <u>Blackburn v. Alabama</u>, 361

16  U.S. 199, 208 (1960).

17          As the Supreme Court has explained, in determining whether a statement is voluntary, courts must

18  look at the totality of the circumstances, taking into account factors such as "the youth of the accused; his

19  lack of education; or his low intelligence; the lack of any advice to the accused of his constitutional rights;

20  the length of detention; the repeated and prolonged nature of the questioning; and the use of physical

21  punishment such as the deprivation of food or sleep. <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226 (1973)

22  (citations omitted). A statement or confession will be involuntary if coerced by either physical intimidation

23  or psychological pressure. A confession is deemed involuntary not only if coerced by physical intimidation,

24  but also if achieved through psychological pressure. "The test is whether the confession was 'extracted by

25  any sort of threats or violence, (or) obtained by any direct or implied promises, however slight, (or) by the

26  exertion of any improper influence.'" <u>Hutto v. Ross</u>, 429 U.S. 28, 30 (1976) (per curiam) (quoting <u>Bram</u>

27  <u>v. United States</u>, 168 U.S. 532, 542-43 (1897)). <u>Accord</u> <u>United States v. Tingle</u>, 658 F.2d 1332, 1335 (9th

28  Cir. 1981).

1    **2.    This Court Must Hold A Hearing Under 18 U.S.C. § 3501 To Determine Whether Mr.**
2    **Sandoval-Morales Statements Were Voluntary**

3    Under 18, U.S.C. § 3501(a), "[b]efore [a] confession is received in evidence, the trial judge shall,

4    out of the presence of the jury, determine any issue as to voluntariness." This Court is thus required to

5    determine whether any statements made by Mr. Sandoval-Morales were voluntary. Additionally, 18 U.S.C.

6    § 3501(b) requires this Court to consider numerous enumerated factors in determining whether Mr.

7    Sandoval-Morales voluntarily made a statement. These factors include whether he understood the nature of

8    the charges against him and whether he understood his constitutional rights.

9    Section 3501(a) clearly requires this Court to make a factual determination. When a factual

10    determination is required, Federal Rule of Criminal Procedure 12 requires the court to make factual findings.

11    See United States v. Prieto-Villa, 910 F.2d 601, 606-10 (9th Cir. 1990). Since "'suppression hearings are

12    often as important as the trial itself,'" these findings should be supported by evidence, not merely an

13    unsubstantiated recitation of purported evidence in a prosecutor's responsive pleadings. Id. at 610 (quoting

14    Waller v. Georgia, 467 U.S. 39, 46 (1984)). Without the presentation of evidence, this Court cannot

15    adequately consider the 18 U.S.C. § 3501(b) factors. Therefore, Mr. Sandoval-Morales requests this Court

16    conduct an evidentiary hearing pursuant to 18 U.S.C. § 3501(a) to determine, outside the presence of the

17    jury, whether the statements he made were voluntary.

18    **V.**

19    **MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS**

20    ***Defense counsel has only received 23 pages of discovery in this case.*** As more information comes

21    to light, due to the Government providing additional discovery in response to these motions or an order of

22    this Court, the defense may find it necessary to file further motions. It is, therefore, requested that defense

23    counsel be allowed the opportunity to file further motions based upon information gained through the

24    discovery process. Specifically, defense counsel has not yet had an opportunity to examine Mr. Sandoval-

25    Morales' immigration A-file yet. After examining his A-file, Mr. Sandoval-Morales may need to file a

26    motion to attack any alleged deportations. Mr. Sandoval thus requests an opportunity to file further motions

27    upon review of his A-file.

28    / / /

1

## VI.

## <u>CONCLUSION</u>

For the foregoing reasons, Mr. Sandoval-Morales respectfully requests that the Court grant the above

motions.

Respectfully submitted,


<u>s/ Hanni M. Fakhoury</u>
Dated: February 14, 2007            **HANNI M. FAKHOURY**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Sandoval-Morales

15                                    08CR0206-H