KAREN P. HEWITT
United States Attorney
LAWRENCE A. CASPER
Assistant U.S. Attorney
California State Bar No. 235110
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone No.: (619) 557-7455
Facsimile No.:  (619) 235-2757
Lawrence.Casper@usdoj.gov

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| | Criminal Case No.  08CR0206-H |
| | District Judge:        Hon. Marilyn L. Huff |
| | Courtroom: |
| UNITED STATES OF AMERICA, | Date:                     February 25, 2008 |
| Plaintiff, | Time:                    2:00 p.m. |
| v. | UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO: |
| RUFINO ALEJANDRO SANDOVAL-MORALES, | (1)  DISMISS INDICTMENT DUE TO IMPROPER GRAND JURY INSTRUCTION; (2) COMPEL DISCOVERY & PRESERVE EVIDENCE; |
| Defendant. | (3) DISMISS INDICTMENT FOR FAILURE TO ALLEGE ESSENTIAL ELEMENTS; (4) SUPPRESS STATEMENTS; AND (5) GRANT LEAVE TO FILE FURTHER MOTIONS |
| | TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES, AND GOVERNMENT'S MOTIONS TO: (1) COMPEL FINGER PRINT EXEMPLARS; & (2)  FOR PRODUCTION OF RECIPROCAL DISCOVERY. |

Plaintiff, the UNITED STATES OF AMERICA, by and through its counsel KAREN P.

HEWITT, United States Attorney, and LAWRENCE A. CASPER, Assistant U.S. Attorney, hereby

files its Response and Opposition (R&O) to the above-described motions of Defendant Rufino

Sandoval-Morales ("Defendant") and files its Motions To Compel Fingerprint Exemplars and for

1    Production of Reciprocal Discovery.  This R&O is based upon the files and records of this case.

2                                              **I**

3                              **STATEMENT OF FACTS**

4        **A.    Statement of the Case**

5        On January 23, 2008, a federal grand jury handed up a one-count Indictment charging

6    Defendant Ruffino Alejandro Sandoval-Morales with being an illegal alien found in the United

7    States after deportation in violation of Title 8, United States Code, Section 1326.  The indictment

8    also alleges that Defendant was removed from the United States subsequent to March 21, 2006.

9    Defendant entered a not guilty plea before Magistrate Judge Peter C. Lewis on January 24, 2008.

10       **B.    Statement of Facts**

11             **1.    Defendant's Arrest**

12       On January 7, 2008 Border Patrol Agent Christian Perez was performing operations

13   approximately seven miles west of the Calexico, California Port of Entry.  During the course of his

14   duties, Agent Perez encountered seven individuals, one of whom was later identified as Defendant

15   Rufino Alejandro Sandoval-Morales.  Agent Perez approached Defendant and identified himself as

16   a Border Patrol Agent.  Defendant provided a field statement in which he admitted to being a citizen

17   and national of Mexico with no legal documents that would allow him to enter or remain in the

18   United States.

19       Defendant was advised of his administrative rights pursuant to Form I-826.  Defendant

20   acknowledged that he understood those rights; he was then transported to the El Centro Border

21   Patrol Station for further processing.  At the station, Defendant's biographical data, fingerprints and

22   photograph were entered into the Border Patrol's computer systems.  These searches revealed that

23   Defendant had previously been deported and had a criminal record.  Record checks through El

24   Centro Sector Communications confirmed this information.

25             **2.    Defendant's Post-Miranda Statement**

26       At approximately 3:45 a.m., Defendant was read his Miranda rights by Border Patrol Agent

27   Carlos Gutierrez witnessed by Senior Border Patrol Agent Kastoll.  Defendant stated that he

28   understood his rights and was willing to answer questions without the presence of an attorney.

1    Defendant admitted to being a citizen or national of Mexico and admitted that he had no documents

2    to enter or remain in the United States legally.  Defendant admitted to making his last entry by

3    walking across the International Boundary from Mexico.  Defendant also admitted to having

4    previously been deported and acknowledged that he had not sought and received permission from

5    the Attorney General or the Secretary of the Department of Homeland Security to re-enter the United

6    States.  The Defendant also stated that he intended to travel to Tri Cities, Washington to find work.

7                    **C.    Defendant's Criminal History**

8    Defendant has a March 21, 2006 conviction in the Franklin County Superior Court in

9    Washington State for child molestation for which he was sentenced to 15 months in custody and two

10    years of probation.

11                                    **II**

12                                 **ARGUMENT**

13        **A.    The Grand Jurors Were Properly Instructed**

14            1.    Introduction

15    Defendant makes contentions relating to two separate instructions given to the grand jury

16    during its impanelment by District Judge Larry A. Burns on January 10, 2007.  [Memorandum of

17    Points and Authorities, pp. 1-17 (hereinafter "Memorandum")[1]  Although recognizing that the Ninth

18    Circuit in United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally found

19    the two grand jury instructions constitutional, Defendant here contends Judge Burns went beyond

20    the text of the approved instructions, and by so doing rendered them improper to the point that the

21    Indictment should be dismissed.  In fact, the identical arguments advanced by Defendant here were

22    rejected in a 12 page written order issued by the Hon. Barry T. Moskowitz in this District and a

23    recent Order entered by the Hon. John A. Houston.  See Order Denying Defendant's Motion to

24    Dismiss the Indictment in United States v. Manuel Martinez-Covarrubias, No. 07cr0491-BTM, filed

25    October 11, 2007 (Appendix 3, hereto) and in the Amended Order Denying Defendant's Motion to

26    _____

27        [1]    A "Partial Transcript" of the grand jury proceedings which records the instructions to the impaneled grand jurors after the voir dire had been conducted is supplied with this response. [Appendix I.] A redacted "Supplemental Transcript" which records relevant portions of the voir dire proceedings is also provided.  [Appendix 2.]

28

1   Dismiss the Indictment in <u>United States v. Diana Jimenez-Bermudez</u>, 07cr1372-JAH (Appendix 4,

2   hereto).

3   .     In making his arguments concerning the two separate instructions, Defendant urges this

4   Court to dismiss the Indictment on two separate bases relating to grand jury procedures, both of

5   which were discussed in <u>United States v. Isgro</u>, 974 F.2d 1091 (9th Cir. 1992).  Concerning the first

6   attacked instruction, Defendant urges this Court to dismiss the Indictment by exercising its

7   supervising powers over grand jury procedures.  This is a practice the Supreme Court discourages

8   as Defendant acknowledges, citing <u>United States v. Williams</u>, 504 U.S. 36, 50 (1992) ("Given the

9   grand jury's operational separateness from its constituting court, it should come as no surprise that

10  we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of

11  grand jury procedure. ").  [<u>Id.</u>]  <u>Isgro</u> reiterated:

12              [A] district court may draw on its supervisory powers to dismiss an
        indictment.  The supervisory powers doctrine "is premised on the inherent ability
13      of the federal courts to formulate procedural rules not specifically required by the
        Constitution or Congress to supervise the administration of justice."  <u>Before it may</u>
14      <u>invoke this power, a court must first find that the defendant is actually prejudiced by</u>
        <u>the misconduct.</u>     Absent such prejudice-that is, absent "'grave' doubt that the
15      decision to indict was free from the substantial influence of [the misconduct]"-a
        dismissal is not warranted.

16
17  974 F.2d at 1094 (citation omitted, emphasis added).  Concerning the second attacked instruction,

18  in an attempt to dodge the holding in <u>Williams</u>, Defendant appears to base his contentions on the

19  Constitution as a reason to dismiss the Indictment.  Concerning that kind of a contention <u>Isgro</u>

    stated:
20
21              [A] court may dismiss an indictment if it perceives constitutional error that interferes
        with the grand jury's independence and the integrity of the grand jury proceeding.
22      "Constitutional error is found where the 'structural protections of the grand jury have
        been so compromised as to render the proceedings fundamentally unfair, allowing
23      the presumption of prejudice' to the defendant."  Constitutional error may also be
        found "if [the] defendant can show a history of prosecutorial misconduct that is so
24      systematic and pervasive that it affects the fundamental fairness of the proceeding
        or if the independence of the grand jury is substantially infringed."

25  974 F.2d at 1094 (citation omitted).[2]

26

27      [2]     In <u>Isgro</u> the defendants choose the abrogation of constitutional rights route when asserting
        that prosecutors have a duty to present exculpatory evidence to grand juries.  They did not prevail.
28      974 F.2d at 1096 ("we find that there was no abrogation of constitutional rights sufficient to support
        the dismissal of the indictment."  (relying on <u>Williams</u>)).

The portions of the two relevant instructions approved in <u>Navarro-Vargas</u> were:

> You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal.   That is to be determined by Congress and not by you.

408 F.3d at 1187, 1202.

> The United States Attorney and his Assistant United States Attorneys will provide you with important service in helping you to find your way when confronted with complex legal problems.   It is entirely proper that you should receive this assistance.  If past experience is any indication of what to expect in the future, then you can expect candor, honesty, and good faith in matters presented by the government attorneys.

408 F.3d at 1187, 1206.

Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the policy behind a law, then the power to return a no bill in such cases is the clearest form of 'jury nullification.'"[3]  408 F.3d at 1203 (footnote omitted).  "Furthermore, the grand jury has few tools for informing itself of the policy or legal justification for the law;  it receives no briefs or arguments from the parties.   The grand jury has little but its own visceral reaction on which to judge the 'wisdom of the law.'"  <u>Id.</u>

Concerning the "United States Attorney and his Assistant United States Attorneys" instruction, the court stated:

> We also reject this final contention and hold that although this passage may include unnecessary language, it does not violate the Constitution.  The "candor, honesty, and good faith" language, when read in the context of the instructions as a whole, does not violate the constitutional relationship between the prosecutor and grand jury. . . .  The instructions balance the praise for the government's attorney by informing the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the prosecution and reminding them that the grand jury is "independent of the United States Attorney[.]"

---

[3]    The Court acknowledged that as a matter of fact jury nullification does take place, and there is no way to control it.  "We recognize and do not discount that some grand jurors might <u>in fact</u> vote to return a no bill because they regard the law as unwise at best or even unconstitutional.   For all the reasons we have discussed, there is <u>no post hoc</u> remedy for that;  the grand jury's motives are not open to examination."  408 F.3d at 1204 (emphasis in original).

08CR206-H

408 F.3d at 1207. Id. "The phrase is not vouching for the prosecutor, but is closer to advising the grand jury of the presumption of regularity and good faith that the branches of government ordinarily afford each other." Id.

2.    The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper

Concerning whether the new grand jurors should concern themselves with the wisdom of the criminal laws enacted by Congress, Judge Burns' full instruction stated:

> You understood from the questions and answers that a couple of people were excused, I think three in this case, because they could not adhere to the principle that I'm about to tell you.
>
> But it's not for you to judge the wisdom of the criminal laws enacted by congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity is criminal is not up to you. That's a judgment that congress makes.
>
> And if you disagree with the judgment made by congress, then your option is not to say "Well I'm going to vote against indicting even though I think that the evidence is sufficient" or "I'm going to vote in favor of even though the evidence may be insufficient." Instead, your obligation is to contact your congressman or advocate for a change in the laws, but not to bring your personal definition of what the law ought to be and try to impose that through applying it in a grand jury setting.

Partial Transcript pp. 8-9.[4]/

Defendant acknowledges that, in line with Navarro-Vargas, "Judge Burns instructed the grand jurors that they were forbidden 'from judg[ing] the wisdom of the criminal laws enacted by Congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity [as] criminal is not up to you.'" [Memorandum p. 2.] Defendant notes, however, that "[t]he instructions go beyond that, however, and tell the grand jurors that, should 'you disagree with that judgment made by Congress, then your option is not to say 'well, I'm going to vote against indicting even though I think that the evidence is sufficient' or 'I'm going to vote in favor of even though the evidence maybe insufficient.'" [Memorandum p. 3.] Defendant contends that this addition to the approved instruction, "flatly bars the grand jury from declining to indict because the

___

[4]    The Supplemental Transcript supplied herewith (Appendix 2) recounts the excusing of the three individuals. This transcript involves the voir dire portion of the grand jury selection process, and has been redacted, to include redaction of the individual names, to provide only the relevant three incidents wherein prospective grand jurors were excused. Specifically, the pages of the Supplemental Transcript supplied are: page 15, line 10 - page 17, line 18; page 24, line 14 - page 28, line 2; page 38, line 9 - page 44, line 17.

grand jurors disagree with a proposed prosecution." [Memorandum p. 3.] Defendant further contends that the flat prohibition was preemptively reinforced by Judge Burns when he "referred to an instance in the grand juror selection process in which he excused three potential jurors," which resulted in his "not only instruct[ing] the grand jurors on his view of their discretion; [but his] enforc[ing] that view on pain of being excused from service as a grand juror."[5/] [Memorandum p. 3.]

In concocting his theory of why Judge Burns erred, Defendant posits that the expanded instruction renders irrelevant the debate about what the word "should" means. [Memorandum pp. 5-6.] Defendant contends, "the instruction flatly bars the grand jury from declining to indict because they disagree with a proposed prosecution." This argument mixes-up two of the holdings in Navarro-Vargas in the hope they will blend into one. They do not.

Navarro-Vargas does permit flatly barring the grand jury from disagreeing with the wisdom of the criminal laws. The statement, "[y]ou cannot judge the wisdom of the criminal laws enacted by Congress," (emphasis added) authorized by Navarro-Vargas, 408 F.3d at 1187, 1202, is not an expression of discretion. Jury nullification is forbidden although acknowledged as a sub rosa fact in grand jury proceedings. 408 F.3d at 1204. In this respect Judge Burns was absolutely within his rights, and within the law, when he excused the three prospective grand jurors because of their expressed inability to apply the laws passed by Congress. Similarly, it was proper for him to remind the impaneled grand jurors that they could not question the wisdom of the laws. As we will establish, this reminder did not pressure the grand jurors to give up their discretion not to return an indictment. Judge Burns' words cannot be parsed to say that they flatly barred the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution, because they do not say that. That aspect of a grand jury's discretionary power (i.e. disagreement with the prosecution) was dealt with in Navarro-Vargas in its discussion of another instruction wherein the

---

[5]  See Appendix 2.

term "should" was germane.[6/]  408 F.3d at 1204-06 ("'Should' Indict if Probable Cause Is Found").

This other instruction bestows discretion on the grand jury not to indict.[7/]  In finding this instruction

constitutional, the court stated in words that ring true here, "It is the grand jury's position in the

constitutional scheme that gives it its independence, not any instructions that a court might offer."

408 F.3d at 1206.  The other instruction was also given by Judge Burns in his own fashion as

follows:

> The function of the grand jury, in federal court at least, is to determine probable cause.  That's the simple formulation that I mentioned to a number of you during the jury selection process.  Probable cause is just an analysis of whether a crime was committed and there's a reasonable basis to believe that and whether a certain person is associated with the commission of that crime, committed it or helped commit it.
>
> If the answer is yes, then as grand jurors your function is to find that the probable cause is there, that the case has been substantiated, and it should move forward. If conscientiously, after listening to the evidence, you say "No, I can't form a reasonable belief has anything to do with it, then your obligation, of course, would be to decline to indict, to turn the case away and not have it go forward.

Partial Transcript pp. 3-4.

> Probable cause means that you have an honestly held conscientious belief and that the belief is reasonable that a federal crime was committed and that the person to be indicted was somehow associated with the commission of that crime.  Either

---

[6]     That instruction is not at issue here.  It read as follows:

> [Y]our task is to determine whether the government's evidence as presented to you is sufficient to cause you to conclude that there is probable cause to believe that the accused is guilty of the offense charged.  To put it another way, you should vote to indict where the evidence presented to you is sufficiently strong to warrant a reasonable person's believing that the accused is probably guilty of the offense with which the accused is charged.

408 F.3d at 1187.

[7]     The court upheld the instruction stating:

> This instruction does not violate the grand jury's independence.    The language of the model charge does not state that the jury "must" or "shall" indict, but merely that it "should" indict if it finds probable cause.    As a matter of pure semantics, it does not "eliminate discretion on the part of the grand jurors," leaving room for the grand jury to dismiss even if it finds probable cause.

408 F.3d at 1205 (confirming holding in United States v. Marcucci, 299 F.3d 1156, 1159 (9th Cir. 2002) (per curiam)).  "In this respect, the grand jury has even greater powers of nonprosecution than the executive because there is, literally, no check on a grand jury's decision not to return an indictment.  408 F.3d at 1206.

08CR206-H

they committed it themselves or they helped someone commit it or they were part of a conspiracy, an illegal agreement, to commit that crime.

To put it another way, you should vote to indict when the evidence presented to you is sufficiently strong to warrant a reasonable person to believe that the accused is probably guilty of the offense which is proposed.

Partial Transcript p. 23.

While the new grand jurors were told by Judge Burns that they could not question the wisdom of the criminal laws per <u>Navarro-Vargas</u>, they were also told by Judge Burns they had the discretion not to return an indictment per <u>Navarro-Vargas</u>. Further, if a potential grand juror could not be dissuaded from questioning the wisdom of the criminal laws, that grand juror should be dismissed as a potential jury nullification advocate. <u>See</u> <u>Merced v. McGrath</u>, 426 F.3d 1076, 1079-80 (9th Cir. 2005). Thus, there was no error requiring dismissal of this Indictment or any other indictment by this Court exercising its supervisory powers.

Further, a reading of the dialogues between Judge Burns and the three excused jurors found in the Supplemental Transcript excerpts (Appendix 2) reflects a measured, thoughtful, almost mutual decision, that those three individuals should not serve on the grand jury because of their views. Judge Burns' reference back to those three colloquies cannot be construed as pressuring the impaneled grand jurors, but merely bespeaks a reminder to the grand jury of their duties.

Finally, even if there was an error, Defendant has not demonstrated he was actually prejudiced thereby, a burden he has to bear. "Absent such prejudice--that is, absent 'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]'--a dismissal is not warranted." <u>Isgro</u>, 974 F.2d at 1094.

3.     The Addition to the "United States Attorney and his Assistant United States Attorneys" Instruction Did Not Violate the Constitution

Concerning the new grand jurors' relationship to the United States Attorney and the Assistant U.S. Attorneys, Judge Burns variously stated:

[T]here's a close association between the grand jury and the U.S. Attorney's Office.

. . . . You'll work closely with the U.S. Attorney's Office in your investigation of cases.

Partial Transcript p. 11.

> [I]n my experience here in the over 20 years in this court, that kind of tension does not exist on a regular basis, that I can recall, between the U.S. Attorney and the grand juries. They generally work together.

Partial Transcript p. 12.

> Now, again, this emphasizes the difference between the function of the grand jury and the trial jury. You're all about probable cause. If you think that there's evidence out there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well. As I told you, in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence.

Partial Transcript p. 20.[8]

> As a practical matter, you will work closely with government lawyers. The U.S. Attorney and the Assistant U.S. Attorneys will provide you with important services and help you find your way when you're confronted with complex legal matters. It's entirely proper that you should receive the assistance from the government lawyers.

> But at the end of the day, the decision about whether a case goes forward and an indictment should be returned is yours and yours alone. If past experience is any indication of what to expect in the future, then you can expect that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that they'll act in good faith in all matters presented to you.

Partial Transcript pp. 26-27.

Commenting on the phrase, "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," Defendant proposes that by making that statement, "Judge Burns also assured the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause." [Memorandum p. 6.] Defendant then ties this statement to the later instruction which "advis[ed] the grand jurors that they 'can expect that the U.S. Attorneys that will appear in front of [them] will be candid, they'll be honest, and . . . they'll act in good faith in all matters presented to you.'" [Memorandum p. 16.] From this lash-up Defendant contends:

---

[8]    Just prior to this instruction, Judge Burns had informed the grand jurors that:

[T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

08CR206-H

These <u>instructions create a presumption</u> that, in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists. A grand juror's reasoning, in a case in which no exculpatory evidence was presented, would proceed along these lines:

(1) I have to consider evidence that undercuts probable cause.

(2) The candid, honest, duty-bound prosecutor would, in good faith, have presented any such evidence to me, if it existed.

(3) Because no such evidence was presented to me, I may conclude that there is none. Even if some exculpatory evidence were presented, a grand juror would necessarily <u>presume</u> that the evidence presented represents the universe of all available exculpatory evidence; if there was more, the duty-bound prosecutor would have presented it.

The instructions therefore discourage investigation--if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time and provide additional support to every probable cause determination: i.e., this case may be week [sic], but I know that there is nothing on the other side of the equation because it was not presented. A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.

[Memorandum p. 17.]  (Emphasis added.)[9]

Frankly, Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," is directly contradicted by <u>United States v. Williams</u>, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no obligation to consider all '<u>substantial</u> exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it."[10] (emphasis added)).  <u>See also</u>,

_____

[9]    The term "presumption" is too strong a word in this setting.  The term "inference" is more appropriate.  <u>See</u> <u>McClean v. Moran</u>, 963 F.2d 1306 (9th Cir. 1992) which states there are (1) permissive inferences; (2) mandatory rebuttable presumptions; and (3) mandatory conclusive presumptions, and explains the difference between the three.  963 F.2d at 1308-09 (discussing <u>Francis v. Franklin</u>, 471 U.S. 314 (1985); <u>Sandstrom v. Montana</u>, 442 U.S. 510 (1979); and <u>Ulster County Court v. Allen</u>, 442 U.S. 140, 157 & n. 16 (1979)).  <u>See also</u> <u>United States v. Warren</u>, 25 F.3d 890, 897 (9th Cir. 1994).

[10]    Note that in <u>Williams</u> the Court established:

Respondent does not contend that the Fifth Amendment itself obliges the prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury.  Instead, building on our statement that the federal courts "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress," he argues that imposition of the Tenth Circuit's disclosure rule is supported by the courts' "supervisory power."

504 U.S. at 45 (citation omitted).  The Court concluded, "we conclude that courts have no authority to prescribe such a duty [to present exculpatory evidence] pursuant to their inherent supervisory

1  United States v. Haynes, 216 F.3d 789, 798 (9th Cir. 2000) ("Finally, their challenge to the

2  government's failure to introduce evidence impugning Fairbanks's credibility lacks merit because

3  prosecutors have no obligation to disclose 'substantial exculpatory evidence' to a grand jury." (citing

4  Williams) (emphasis added)).

5          However, the analysis does not stop there. Prior to assuming his judicial duties, Judge Burns

6  was a member of the United States Attorney's Office, and made appearances in front of the federal

7  grand jury.[11]  As such he was undoubtedly aware of the provisions in the United States Attorneys'

8  Manual ("USAM").[12]  Specifically, it appears he is aware of USAM Section 9-11.233 thereof which

9  reads:

10          In United States v. Williams, 112 S.Ct. 1735 (1992), the Supreme Court held
        that the Federal courts' supervisory powers over the grand jury did not include the
11      power to make a rule allowing the dismissal of an otherwise valid indictment where
        the prosecutor failed to introduce substantial exculpatory evidence to a grand jury.
12      It is the policy of the Department of Justice, however, that when a prosecutor
        conducting a grand jury inquiry is personally aware of substantial evidence that
13      directly negates the guilt of a subject of the investigation, the prosecutor must present
        or otherwise disclose such evidence to the grand jury before seeking an indictment
14      against such a person. While a failure to follow the Department's policy should not
        result in dismissal of an indictment, appellate courts may refer violations of the
15      policy to the Office of Professional Responsibility for review.

16  (Emphasis added.)[13]  This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure

17  of Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or

18  supersede the policy that requires prosecutors to disclose 'substantial evidence that directly negates

19

20  _____

21  authority over their own proceedings." 504 U.S. at 55. See also, United States v. Haynes, 216 F.3d
    789, 797-98 (9th Cir. 2000). However, the Ninth Circuit in Isgro used Williams' holding that the
22  supervisory powers would not be invoked to ward off an attack on grand jury procedures couched
    in constitutional terms. 974 F.2d at 1096.

23      [11]          He recalled those days when instructing the new grand jurors. [Partial Transcript pp.
    12, 14-16, 17-18.]
24

25      [12]          The USAM is available on-line at www.usdoj.gov/usao/eousa/foia_reading_room/
    usam/index.html.

26      [13]          See www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm. Even
    if Judge Burns did not know of this provision in the USAM while he was a member of the
27  United States Attorney's Office, because of the accessability of the USAM on the internet, as the
    District Judge overseeing the grand jury he certainly could determine the required duties of the
28  United States Attorneys appearing before the grand jury from that source.

1   the guilt of a subject of the investigation' to the grand jury before seeking an indictment, see USAM

2   § 9-11.233 ."  (Emphasis added.)[14]

3          The facts that Judge Burns' statement contradicts Williams, but is in line with self-imposed

4   guidelines for United States Attorneys, does not create the constitutional crisis proposed by

5   Defendant.  No improper presumption/inference was created when Judge Burns reiterated what he

6   knew to be a self-imposed duty to the new grand jurors.  Simply stated, in the vast majority of the

7   cases the reason the prosecutor does not present "substantial" exculpatory evidence, is because no

8   "substantial" exculpatory evidence exists.[15] If it does exist, as mandated by the USAM, the evidence

9   should be presented to the grand jury by the Assistant U.S. Attorney upon pain of possibly having

10  his or her career destroyed by an Office of Professional Responsibility investigation.  Even if there

11  is some nefarious slant to the grand jury proceedings when the prosecutor does not present any

12  "substantial" exculpatory evidence, because there is none, the negative inference created thereby in

13  the minds of the grand jurors is legitimate.  In cases such as Defendant's, the Government has no

14  "substantial" exculpatory evidence generated from its investigation or from submissions tendered

15  by the defendant.[16]  There is nothing wrong  in this scenario with a grand juror inferring from this

16

17          [14]        See    www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm.
18  Similarly, this new section does not bestow any procedural or substantive rights on defendants.

19          Under this policy, the government's disclosure will exceed its constitutional
    obligations. This expanded disclosure policy, however, does not create a general
    right of discovery in criminal cases. Nor does it provide defendants with any
20          additional rights or remedies.

21  USAM 9-5.001, ¶ "E".  See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm.htm.

22          [15]        Recall Judge Burns also told the grand jurors that:

23          [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-
            blown trial, you're likely in most cases not to hear the other side of the story, if there
24          is another side to the story.

25  Partial transcript p. 19.

26          [16]    Realistically, given "that the grand jury sits not to determine guilt or innocence, but to assess
    whether there is adequate basis for bringing a criminal charge [i.e. only finding probable cause],"
27  Williams, 504 U.S. at 51 (citing United States v. Calandra, 414 U.S. 338, 343-44 (1974)), no
    competent defense attorney is going to preview the defendant's defense story prior to trial assuming
28  one will be presented to a fact-finder.  Therefore, defense submissions to the grand jury will be few

state-of-affairs that there is no "substantial" exculpatory evidence, or even if some exculpatory evidence were presented, the evidence presented represents the universe of all available exculpatory evidence.

Further, just as the instruction language regarding the United States Attorney attacked in Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution," 408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does not violate the Constitution.  In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992), the Ninth Circuit while reviewing Williams established that there is nothing in the Constitution which requires a prosecutor to give the person under investigation the right to present anything  to the grand jury (including his or her testimony or other exculpatory evidence), and the absence of that information does not require dismissal of the indictment.  974 F.2d at 1096 ("Williams clearly rejects the idea that there exists a right to such 'fair' or 'objective' grand jury deliberations.").  That the USAM imposes a duty on United States Attorneys to present "substantial" exculpatory evidence to the grand jury is irrelevant since by its own terms the USAM excludes defendants from reaping any benefits from the self-imposed policy.[17]  Therefore, while the "duty-bound" statement was an interesting tidbit of information, it was  unnecessary in terms of advising the grand jurors of their rights and responsibilities, and does not cast an unconstitutional pall upon the instructions which requires dismissal of the indictment in this case or any case.  The grand jurors were repeatedly instructed by Judge Burns that, in essence, the United Sates Attorneys are "good guys," which was authorized by Navarro-Vargas.  408 F.3d at 1206-07 ("laudatory comments . . . not vouching for the prosecutor").  But he also repeatedly "remind[ed] the grand jury that it stands between the government and the accused and is independent,"  which was also required by Navarro-Vargas.  408 F.3d at 1207.  In

---

and far between.

[17]     The apparent irony is that although an Assistant U.S. Attorney will not lose a case for failure to present exculpatory information to a grand jury per Williams, he or she could lose his or her job with the United States Attorney's Office for such a failure per the USAM.

1    this context the unnecessary "duty-bound" statement does not mean the instructions were

2    constitutionally defective requiring dismissal of this indictment or any indictment.

3        The "duty bound" statement constitutional contentions raised by Defendant do not indicate

4    that the "'structural protections of the grand jury have been so compromised as to render the

5    proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant," and

6    "[the] defendant can[not] show a history of prosecutorial misconduct that is so systematic and

7    pervasive that it affects the fundamental fairness of the proceeding or if the independence of the

8    grand jury is substantially infringed." Isgro, 974 F.2d at 1094 (citation omitted). Therefore, this

9    Indictment, or any other indictment, need not be dismissed.

10        **B.    The Government Will Comply With All Discovery Obligations**

11        The Government intends to continue full compliance with its discovery obligations under

12    Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. 3500), and Rule 16 of the Federal

13    Rules of Criminal Procedure.[18]/ To date, the Government has provided 29 pages of discovery as well

14    as a DVD that includes the advisal of rights and post-Miranda statement of Defendant. The

15    Government anticipates that all discovery issues can be resolved amicably and informally, and has

16    addressed Defendant's specific requests below.

17        **(1)    Defendant's Statements**

18        The Government recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to

19    provide to Defendant the substance of Defendant's oral statements and Defendant's written

20    statements. The Government has produced all of the Defendant's statements that are known to the

21    undersigned Assistant U.S. Attorney at this date. If the Government discovers additional oral or

22    written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such

23    statements will be provided to Defendant.

24        The Government has no objection to the preservation of the handwritten notes taken by any

25    of the agents and officers. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents

26    must preserve their original notes of interviews of an accused or prospective government witnesses).

27

28        [18]    Unless otherwise noted, all references to "Rules" refers to the Federal Rules of
         Criminal Procedure.

1    However, the Government objects to providing Defendant with a copy of the rough notes at this

2    time.  Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those

3    notes have been accurately reflected in a type-written report.  See United States v. Brown, 303 F.3d

4    582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A)

5    does not require disclosure of an agent's notes even where there are "minor discrepancies" between

6    the notes and a report).  The Government is not required to produce rough notes pursuant to the

7    Jencks Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless

8    the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have

9    been approved or adopted by the witness.  United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir.

10   1980).  The rough notes in this case do not constitute "statements" in accordance with the Jencks

11   Act.  See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not

12   statements under the Jencks Act where notes were scattered and all the information contained in the

13   notes was available in other forms).  The notes are not Brady material because the notes do not

14   present any material exculpatory information, or any evidence favorable to Defendant that is

15   material to guilt or punishment.  Brown, 303 F.3d at 595-96 (rough notes were not Brady material

16   because the notes were neither favorable to the defense nor material to defendant's guilt or

17   punishment); United States v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents'

18   rough notes contained Brady evidence was insufficient).  If, during a future evidentiary hearing,

19   certain rough notes become discoverable under Rule 16, the Jencks Act, or Brady, the notes in

20   question will be provided to Defendant.

21                    **(2)    Arrest reports, notes, dispatch tapes**

22          The Government has provided Defendant with all known reports related to Defendant's

23   arrest in this case that are available at this time.  The Government will continue to comply with its

24   obligation to provide to Defendant all reports subject to Rule 16.  As previously noted, the

25   Government has no objection to the preservation of the agents' handwritten notes, but objects to

26   providing Defendant with a copy of the rough notes at this time because the notes are not subject

27   to disclosure under Rule 16, the Jencks Act, or Brady.  The United States is presently unaware of

28   any dispatch tapes relating to the Defendant's arrest in this case.

1

             **(3)**    **A-File**

2          The United States will make the A-File available for inspection in the Office of the United

3    States Attorney at a time mutually convenient for the parties.

4

             **(4)**    **Brady Material**

5          The Government has and will continue to perform its duty under <u>Brady</u> to disclose material

6 exculpatory information or evidence favorable to Defendant when such evidence is material to guilt

7 or punishment.  The Government recognizes that its obligation under <u>Brady</u> covers not only

8 exculpatory evidence, but also evidence that could be used to impeach witnesses who testify on

9 behalf of the United States.  <u>See Giglio v. United States</u>, 405 U.S. 150, 154 (1972); <u>United States</u>

10 <u>v. Bagley</u>, 473 U.S. 667, 676-77 (1985).  This obligation also extends to evidence that was not

11 requested by the defense.  <u>Bagley</u>, 473 U.S. at 682; <u>United States v. Agurs</u>, 427 U.S. 97, 107-10

12 (1976).  "Evidence is material, and must be disclosed (pursuant to <u>Brady</u>), 'if there is a reasonable

13 probability that, had the evidence been disclosed to the defense, the result of the proceeding would

14 have been different.'" <u>Carriger v. Stewart</u>, 132 F.3d 463, 479 (9th Cir. 1997) (<u>en banc</u>).  The final

15 determination of materiality is based on the "suppressed evidence considered collectively, not item

16 by item."  <u>Kyles v. Whitley</u>, 514 U.S. 419, 436-37 (1995).

17         <u>Brady</u> does not, however, mandate that the Government open all of its files for discovery.

18 <u>See United States v. Henke</u>, 222 F.3d 633, 642-44 (9th Cir. 2000)(<u>per curiam</u>).  Under <u>Brady</u>, the

19 Government is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence

20 (<u>see United States v. Smith</u>, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the

21 defendant from other sources (<u>see United States v. Bracy</u>, 67 F.3d 1421, 1428-29 (9th Cir. 1995));

22 (3) evidence that the defendant already possesses (<u>see United States v. Mikaelian</u>, 168 F.3d 380,

23 389-90 (9th Cir. 1999), <u>amended by</u> 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the

24 undersigned Assistant U.S. Attorney could not reasonably be imputed to have knowledge or control

25 over.  (<u>see United States v. Hanson</u>, 262 F.3d 1217, 1234-35 (11th Cir. 2001)).  Nor does <u>Brady</u>

26 require the Government "to create exculpatory evidence that does not exist," <u>United States v.</u>

27 <u>Sukumolahan</u>, 610 F.2d 685, 687 (9th Cir. 1980), but only requires that the Government "supply a

28 defendant with exculpatory information of which it is aware." <u>United States v. Flores</u>, 540 F.2d 432,

438 (9th Cir. 1976). 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value."). Accordingly, Defendant's demand for this information is premature.

### (5)     Defendant's Prior Record

The United States has already provided Defendant with a copy of any criminal record in accordance with Federal Rule of Criminal Procedure 16(a)(1)(D).

### (6)     Proposed 404(b) and 609 Evidence

Should the United States seek to introduce any similar act evidence pursuant to Federal Rules of Evidence 404(b) or 609(b), the United States will provide Defendant with notice of its proposed use of such evidence and information about such bad act at or before the time the United States' trial memorandum is filed. The United States reserves the right to introduce as prior act evidence any conviction, arrest or prior act that is disclosed to the defense in discovery.

### (7)     Evidence Seized

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

The United States, however, need not produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

### (8)     Request for Preservation of Evidence

After issuance of a an order from the Court, the United States will preserve all evidence to which Defendant is entitled to pursuant to the relevant discovery rules. However, the United States objects to Defendant's blanket request to preserve all physical evidence.

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within his possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as

1   evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.  The

2   United States has made the evidence available to Defendant and Defendant's investigators and will

3   comply with any request for inspection.

4                    **(9)     Tangible Objects**

5           The Government has complied and will continue to comply with Rule 16(a)(1)(E) in

6   allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all

7   tangible objects seized that are within its possession, custody, or control, and that are either material

8   to the preparation of Defendant's defense, or are intended for use by the Government as evidence

9   during its case-in-chief at trial, or were obtained from or belong to Defendant.   The Government

10  need not, however, produce rebuttal evidence in advance of trial.  United States v. Givens, 767 F.2d

11  574, 584 (9th Cir. 1984).

12                   **(10)     Expert Witnesses**

13          The Government will comply with Rule 16(a)(1)(G) and provide Defendant with a written

14  summary of any expert testimony that the Government intends to use under Rules 702, 703, or 705

15  of the Federal Rules of Evidence during its case-in-chief at trial.  This summary shall include the

16  expert witnesses' qualifications, the expert witnesses opinions, the bases, and reasons for those

17  opinions.

18              **(11)     Reports of Scientific Tests or Examinations**

19          The United States is not aware of any scientific tests or examinations at this time but, if any

20  scientific tests or examinations were conducted or are conducted in the future, the United States will

21  provide Defendant with any reports of any such tests or examinations in accordance with Rule

22  16(a)(1)(F).

23                   **(12)     Henthorn Material**

24          The Government will comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991)

25  and request that all federal agencies involved in the criminal investigation and prosecution review

26  the personnel files of the federal law enforcement inspectors, officers, and special agents whom the

27  Government intends to call at trial and disclose information favorable to the defense that meets the

28  appropriate standard of materiality.  United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002)(citing

1    United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992).   If the undersigned Assistant U.S.

2    Attorney is uncertain whether certain incriminating information in the personnel files is "material,"

3    the information will be submitted to the Court for an in camera inspection and review.

**(13)    Evidence of Bias or Motive To Lie**

4

5         The United States is unaware of any evidence indicating that a prospective witness is biased

6    or prejudiced against Defendant.  The United States is also unaware of any evidence that prospective

7    witnesses have a motive to falsify or distort testimony.

**(14)    Impeachment Evidence**

8

9         The Government recognizes its obligation under Brady and Giglio to provide evidence that

10   could be used to impeach Government witnesses including material information regarding

11   demonstrable bias or motive to lie.

**(15)    Evidence of Criminal Investigation of Any Government Witness**

12

13        Defendants are not entitled to any evidence that a prospective witness is under criminal

14   investigation by federal, state, or local authorities.  "[T]he criminal records of such [Government]

15   witnesses are not discoverable." United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976);

16   United States v. Riley, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records of

17   prosecution witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United

18   States v. Rinn, 586 F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that the

19   Government has no discovery obligation under Fed. R. Crim. P. 16(a)(1)(C) to supply a defendant

20   with the criminal records of the Government's intended witnesses.") (citing Taylor, 542 F.2d at

21   1026).

22        The Government will, however, provide the conviction record, if any, which could be used

23   to impeach witnesses the Government intends to call in its case-in-chief.  When disclosing such

24   information, disclosure need only extend to witnesses the United States intends to call in its case-in-

25   chief.  United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607

26   F.2d 1305, 1309 (9th Cir. 1979).

**(16)    Evidence Affecting Perception, Recollection, Ability to Communicate, or**
**Truth Telling**

27

28

1    The United States is unaware of any evidence indicating that a prospective witness has a

2    problem with perception, recollection, communication, or truth-telling.  The United States

3    recognizes its obligation under <u>Brady</u> and <u>Giglio</u> to provide material evidence that could be used to

4    impeach Government witnesses including material information related to perception, recollection

5    or ability to communicate.  The Government objects to providing any evidence that a witness has

6    ever used narcotics or other controlled substances, or has ever been an alcoholic because such

7    information is not discoverable under Rule 16, <u>Brady</u>, <u>Giglio</u>, <u>Henthorn</u>, or any other Constitutional

8    or statutory disclosure provision.

9    **(17)    Witness Addresses**

10    The Government has already provided Defendant with the reports containing the names of

11    the agents involved in the apprehension and interviews of Defendant.  A defendant in a non-capital

12    case, however, has no right to discover the identity of prospective Government witnesses prior to

13    trial.  <u>See</u> <u>Weatherford v. Bursey</u>, 429 U.S. 545, 559 (1977); <u>United States v. Dishner</u>, 974 F.2d

14    1502, 1522 (9th Cir 1992) (citing <u>United States v. Steel</u>, 759 F.2d 706, 709 (9th Cir. 1985)); <u>United</u>

15    <u>States v. Hicks</u>, 103 F.23d 837, 841 (9th Cir. 1996).   Nevertheless, in its trial memorandum, the

16    Government will provide Defendant with a list of all witnesses whom it intends to call in its case-in-

17    chief, although delivery of such a witness list is not required.  <u>See</u> <u>United States v. Discher</u>, 960 F.2d

18    870 (9th Cir. 1992); <u>United States v. Mills</u>, 810 F.2d 907, 910 (9th Cir. 1987).

19    The Government objects to any request that the Government provide a list of every witness

20    to the crimes charged who will not be called as a Government witness.  "There is no statutory basis

21    for granting such broad requests," and a request for the names and addresses of witnesses who will

22    not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)(C)."   <u>United States v. Hsin-</u>

23    <u>Yung</u>, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting <u>United States v. Boffa</u>, 513 F. Supp. 444, 502

24    (D. Del. 1980)).  The Government is not required to produce all possible information and evidence

25    regarding any speculative defense claimed by Defendant.  <u>Wood v. Bartholomew</u>, 516 U.S. 1, 6-8

26    (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery

27    of admissible exculpatory evidence are not subject to disclosure under <u>Brady</u>).

28    **(18)    Names of Witnesses Favorable to the Defendant**

1  As stated earlier, the Government will continue to comply with its obligations under Brady

2  and its progeny.  At the present time, the Government is not aware of any witnesses who have made

3  an arguably favorable statement concerning the defendant.

4  **(19)    Statements Relevant to the Defense**

5  The United States will comply with all of its discovery obligations.  However, "the

6  prosecution does not have a constitutional duty to disclose every bit of information that might affect

7  the jury's decision; it need only disclose information favorable to the defense that meets the

8  appropriate standard of materiality."  Gardner, 611 F.2d at 774-775 (citation omitted).

9  **(20)    Giglio Information**

10  As stated previously, the United States will comply with its obligations pursuant to Brady

11  v. Maryland, 373 U.S.  83 (1963), the Jencks Act, United States v. Henthorn, 931 F.2d 29 (9th Cir.

12  1991), and Giglio v. United States, 405 U.S. 150 (1972).

13  **(21)    Informants and Cooperating Witnesses**

14  If the Government determines that there is a confidential informant who has information that

15  is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a

16  cause," the Government will either disclose the identity of the informant or submit the informant's

17  identity to the Court for an in-chambers inspection.  See Roviaro v. United States, 353 U.S. 53, 60-

18  61 (1957) (emphasis added); United States v. Ramirez-Rangel, 103 F.3d 1501, 1505 (9th Cir. 1997)

19  (same).

20  **(22)    Evidence of Bias or Motive To Lie**

21  The United States is unaware of any evidence indicating that a prospective witness is biased

22  or prejudiced against Defendant.  The United States is also unaware of any evidence that prospective

23  witnesses have a motive to falsify or distort testimony.

24  **(23)    Jencks Act Material**

25  The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified on

26  direct examination, the Government must give the Defendant any "statement" (as defined by the

27  Jencks Act) in the Government's possession that was made by the witness relating to the subject

28  matter to which the witness testified. 18 U.S.C. § 3500(b).  A "statement" under the Jencks Act is

1   (1) a written statement made by the witness and signed or otherwise adopted or approved by him,

2   (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral

3   statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e).   If notes are

4   read back to a witness to see whether or not the government agent correctly understood what the

5   witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act.

6   United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425

7   U.S. 94, 98 (1976)).  While the Government is only required to produce all Jencks Act material after

8   the witness testifies, the Government plans to provide most (if not all) Jencks Act material well in

9   advance of trial to avoid any needless delays.

10   **(24)   Residual Request**

11   The Government will comply with all of its discovery obligations, but objects to the broad

12   and unspecified nature of Defendant's residual discovery request.

13   **C.    Defendant's Motion To Dismiss Indictment For Failure to Allege Elements Should Be Denied**

14

15   The indictment returned by the Grand Jury in this case plainly sets forth each of the

16   necessary elements of a Title 8, United States Code, Section 1326  "found in" offense as those

   elements have been identified by the Ninth Circuit.  Accordingly, Defendant's motion should be

17   denied.  The Supreme Court has noted that a charging document is generally sufficient if it sets forth

18   the offense in the words of the statute itself, as long as "those words of themselves fully, directly,

19   and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to

20   constitute the offence intended to be punished." Hamling v. United States, 418 U.S. 87, 117 (1974);

21   see also United States v. Musacchio, 968 F.2d 782, 787 (9th Cir.1991) (indictment that tracks the

22   statute itself is generally sufficient).  Therefore, alleging that the defendant is a deported alien who

23   was found in the United States without consent is plainly sufficient.

24   The Ninth Circuit has rejected Defendant's argument that the Court should dismiss the

25   indictment for failure to charge all of the necessary components of an entry, e.g., either (1)

26   inspection and admission by an immigration officer, or (2) actual and intentional evasion of

27   inspection at the inspection point nearest to where he was apprehended. Rivera-Sillas, 417 F.3d at

28

1019-20. ("The Government need not plead and prove entry in order to charge or convict an alien with a § 1326 'found in' crime.").  See also United States v. Parga-Rosas, 238 F.3d 1209, 1213 (9th Cir. 2001) ("[W]e have never suggested that the crime of "entry" must be charged in order to charge the crime of being "found in.").

The Ninth Circuit has considered and rejected Defendant's exact claim in United States v. Rivera-Sillas, 417 F.3d 1014, 1018 (9th Cir. 2005) (explaining that the "found in" clause of § 1326 "does not require the indictment to specifically state that the defendant alien entered the United States."). In that case, the Ninth Circuit specifically held that the Government need not allege the Defendant voluntarily entered the United States in a "found in" indictment. Id. at 1018-19. Rivera-Sillas reaffirms prior Ninth Circuit holdings on this issue. United States v. Rodriguez-Rodriguez, 364 F.3d 1142, 1145 (9th Cir. 2004)(citing United States v. Parga-Rosas, 238 F.3d 1209 (9th Cir. 2001)). In Rodriguez-Rodriguez, the Ninth Circuit reaffirmed that the Government need not allege a voluntary entry for a "found in" indictment under §1326. Id.  In doing so, the Court directly rejected Defendant's claim that Parga-Rosas had been implicitly overruled by the Ninth Circuit's decision in United States v. Buckland, 289 F.3d 558 (9th Cir.2002) (en banc). Rodriguez-Rodriguez, 364 F.3d at 1146 ("Buckland in no way overrules Parga-Rosas.") Thus, under Parga-Rosas, Rodriguez-Rodriguez, and Rivera-Sillas, the indictment in this case sufficiently states the elements of the offense. Defendant also contends that the Court should dismiss the indictment for failure to charge the required mens rea element that Defendant knew he was in the United States. This argument has also been rejected by the Ninth Circuit in Rivera-Sillas.

A "found in" offense under 8 U.S.C. §  1326 is a general intent crime. Rivera-Sillas, 417 F.3d at 1020. An indictment that alleges that the defendant is "a deported alien subsequently found in the United States without permission suffices [to allege general intent].'" Id. (citations omitted).  Indeed, the indictment form used in this case is identical, or virtually identical, to hundreds of other "attempted reentry" indictments filed in this District. Because each of the requisite elements is pleaded in the Indictment, Defendant's motion should be denied.

Defendant argues that the indictment is defective in that it does not allege a deportation date or a temporal relationship to his removal.  Quite to the contrary, the Indictment alleges that the

1    defendant "was removed from the United States subsequent to March 21, 2006." This date is

2    subsequent to his felony convictions and prior to his "found in" date as charged in the Indictment.

3    This complies with the requirements of United States v. Covian-Sandoval, 462 F.3d 1090, 1096-98

4    (9th Cir.2006) (holding that the fact of a prior conviction need not have been submitted to the jury,

5    but the date of a prior removal, which is necessary to determine whether the removal had followed

6    the conviction in time, must be admitted by the defendant or found by a jury); see United States v.

7    Salazar-Lopez,506 F.3d 748 (9th Cir. 2007) ("the date of the removal, or at least the fact that Salazar-

8    Lopez had been removed after his conviction, should have been alleged in the indictment and proved

9    to the jury."). Accordingly, Defendant's motion should be denied.

10        **D.    Defendant's Motion To Suppress Should Be Denied**

11        Defendant moves to suppress statements and requests that the Government prove that all

12    statements were voluntarily made, and made after a knowing and intelligent Miranda waiver.

13    Defendant contends that 18 U.S.C. § 3501 mandates an evidentiary hearing be held to determine

14    whether Defendant's statements were voluntary. Defendant's motion to suppress statements should

15    be denied without an evidentiary hearing because he failed to allege a specific factual dispute, and

16    failed to support his contentions with a sworn declaration as required by Crim LR 47.1(g).

17    Defendant erroneously claims that his field statement in which he admitted to being a Mexican

18    citizen with no legal right to enter or remain in the United States should somehow be suppressed.

19        1.    Defendant's Field Statement Should Not Be Suppressed

20        Detaining a person for routine border questioning is not custodial. United States v. Troise,

21    796 F.2d 310, 314 (9th Cir. 1986); see also United States v. Galindo-Gallegos, 244 F.3d 728 (9th

22    Cir.), modified by 255 F.3d 1154 (9th Cir. 2001). In Galindo-Gallegos, Border Patrol agents

23    apprehended the defendant and others running near the Mexican border. 244 F.3d at 731. Once they

24    had the 15 or 20 people seated, an agent asked them what country they were from and whether they

25    had a legal right to be in the United States. Id. The defendant said that he was from Mexico and had

26    no such right. Id. The border patrol agents did not advise the group of their Miranda rights prior

27    to this questioning. Id. After the defendant admitted that he was an alien illegally in the United

28    States, he and others were handcuffed and put into one of the vehicles. Id. The Ninth Circuit

1    affirmed the district court's decision to not suppress the defendant's statements in the field. Id. The

2    circumstances of this case are virtually identical to Galindo-Gallegos; accordingly the field

3    statement should not be suppressed.

4              2.    Knowing, Intelligent, and Voluntary Miranda Waiver

5          A statement made in response to custodial interrogation is admissible under Miranda v.

6    Arizona, 384 U.S. 437 (1966), and 18 U.S.C. § 3501 if a preponderance of the evidence indicates

7    that the statement was made after an advisement of Miranda rights, and was not elicited by improper

8    coercion. See Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of evidence

9    standard governs voluntariness and Miranda determinations; valid waiver of Miranda rights should

10   not be found in the "absence of police overreaching").

11         A valid Miranda waiver depends on the totality of the circumstances, including  the

12   background, experience, and conduct of the  defendant.  North Carolina v. Butler, 441 U.S. 369,

13   374-75 (1979).   To be knowing and intelligent, "the waiver must have been made with a full

14   awareness of both the nature of the right being abandoned and the consequences of the decision to

15   abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). The Government bears the burden of

16   establishing the existence of  a valid Miranda waiver. North Carolina v. Butler, 441 U.S. at 373.  In

17   assessing the validity of a defendant's Miranda waiver, this Courts should analyze the totality of the

18   circumstances surrounding the interrogations.  See Moran v. Burbine, 475 U.S. at 421.   Factors

19   commonly considered include: (1) the defendant's age (see United States v. Doe, 155 F.3d 1070,

20   1074-75 (9th Cir. 1998) (en banc) (valid waiver because the 17 year old defendant did not have

21   trouble understanding questions, gave coherent answers, and did not ask officers to notify parents),

22   (2) the defendant's familiarity with the criminal justice system (see United States v. Williams, 291

23   F.3d 1180, 1190 (9th Cir. 2002) (waiver valid in part because defendant was familiar with the

24   criminal justice system from past encounters), (3) the explicitness of the Miranda waiver (see United

25   States v. Bernard S., 795 F.2d 749, 753 n.4 (9th Cir. 1986) (a written Miranda waiver is "strong

26   evidence that the waiver is valid"); United States v. Amano, 229 F.3d 801, 805 (9th Cir. 2000)

27   (waiver valid where Miranda rights were read to defendant twice and defendant signed a written

28   waiver), and (4) the time lapse between the reading of the Miranda warnings and the interrogation

1    or confession.  See Guam v. Dela Pena, 72 F.3d 767, 769-70 (9th Cir. 1995) (valid waiver despite

2    15-hour delay between Miranda warnings and interview).

3            Here, the Border Patrol agents advised Defendant of his Miranda rights prior to any post-

4    arrest custodial interrogation.  As evidenced by the digital video recording, Defendant was advised

5    of his Miranda rights before the interrogation.  Defendant orally agreed to waive his Miranda rights.

6    Based on the totality of the circumstances, Defendant's statements should not be suppressed because

7    his Miranda waiver was knowing, intelligent, and voluntary.

8                        3.        Defendant's Statements Were Voluntary

9            The inquiry into the voluntariness of statements is the same as the inquiry into the

10   voluntariness of a waiver of Miranda rights.  See Derrick v. Peterson, 924 F.2d 813, 820 (9th

11   Cir.1990).    Courts look to the totality of the circumstances to determine whether the statements

12   were "the product of free and deliberate choice rather than coercion or improper inducement."

13   United States v. Doe, 155 F.3d 1070, 1074(9th Cir. 1998)(en banc).

14           A confession is involuntary if "coerced either by physical intimidation or psychological

15   pressure."  United States v. Crawford, 372 F.3d 1048, 1060 (9th Cir. 2004) (quoting United States

16   v. Haswood, 350 F.3d 1024, 1027 (9th Cir. 2003)).  In determining whether a defendant's confession

17   was voluntary, "the question is 'whether the defendant's will was overborne at the time he

18   confessed.'"  Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir.), cert. denied, _ U.S. _, 124 S. Ct. 446

19   (2003) (quoting Haynes v. Washington, 373 U.S. 503, 513 (1963)). Psychological coercion invokes

20   no per se rule. United States v. Miller, 984 F.2d 1028, 1030 (9th Cir. 1993). Therefore, the Court

21   must "consider the totality of the circumstances involved and their effect upon the will of the

22   defendant."  Id. at 1031 (citing Schneckloth v. Bustamonte, 412 U.S. 218, 226-27 (1973)).

23           In determining the issue of voluntariness, this Court should consider the five factors under

24   18 U.S.C. § 3501(b).  United States v. Andaverde, 64 F.3d 1305, 1311 (9th Cir. 1995).  These five

25   factors include: (1) the time elapsing between arrest and arraignment of the defendant making the

26   confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the

27   nature of the offense with which he or she was charged or of which he was suspected at the time of

28   making the confession, (3) whether or not such defendant was advised or knew that he or she was

1  not required to make any statement and that any such statement could be used against him, (4)

2  whether or not such defendant had been advised prior to questioning of his or her right to the

3  assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel

4  when questioned and when giving such confession. 18 U.S.C. § 3501(b). All five statutory factors

5  under 18 U.S.C. § 3501(b) need not be met to find the statements were voluntarily made. See

6  Andaverde, 64 F.3d at 1313.

7  As discussed above, Defendant was read his Miranda rights and explicitly stated that he

8  understood his Miranda rights and agreed to waive those rights. See United States v. Gamez, 301

9  F.3d 1138, 1144 (9th Cir. 2002). Defendant's statements were not the product of physical

10  intimidation or psychological pressure of any kind by any Government agent. There is no evidence

11  that Defendant's will was overborne at the time of his statements. Consequently, Defendant's

12  motion to suppress his statements as involuntarily given should be denied.

13  4.    Defendant's Motion Should Be Denied Without An Evidentiary Hearing

14  This Court can and should deny (without prejudice) Defendant's motion to suppress

15  statements without an evidentiary hearing. First, under Ninth Circuit precedent as well as Southern

16  District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a

17  motion to suppress only when the defendant adduces specific facts sufficient to require the granting

18  of the defendant's motion. United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he

19  defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer.

20  In these circumstances, the district court was not required to hold an evidentiary hearing.").

21  Second, an evidentiary hearing is not required if a defendant's motion to suppress and

22  supporting declarations or affidavits fail to allege a specific factual dispute. See United States v.

23  Walczak, 783 F.2d 852, 857 (9th Cir. 1986) (an evidentiary hearing is required "if the moving

24  papers are definite, specific, detailed and nonconjectural to enable the court to conclude that

25  contested issues of [material] fact . . . are at issue"); see United States v. Howell, 231 F.3d 616, 620-

26  23 (9th Cir. 2000) (holding that "[a]n evidentiary hearing on a motion to suppress need be held only

27  when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable

28  the trial court to conclude that contested issues of fact exist."); United States v. Batiste, 868 F.2d

1089, 1093 (9th Cir. 1989) (District Court is not required to hold an evidentiary hearing where "defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer"); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (motion to suppress "akin to boilerplate motions that lay no factual foundation" and unsworn representations of counsel were "too indefinite and conjectural to require the government to respond").

Defendant failed to specifically identify the statements that he seeks to suppress or allege any specific factual or legal dispute regarding the admissibility of the statements. Defendant did not allege that the Border Patrol agents failed to advise Defendant of his Miranda rights, that the Miranda rights provided were somehow defective, that his Miranda waivers were not knowingly, intelligently, or voluntarily made, or that the statements were involuntarily coerced. Defendant's motion to suppress is pure boilerplate and lacks sufficient definiteness, clarity, and specificity to enable the Court to rule or allow the Government to prepare for any motion to suppress statements.

### E.   The Government Does Not Oppose Leave To File Further Motions, So Long As They Are Based on New Evidence

The Government does not object to the granting of leave to file further motions as long as the order applies equally to both parties and any additional defense motions are based on newly discovered evidence or discovery provided by the Government subsequent to the instant motion.

### III

### GOVERNMENT MOTIONS

A.        Government Motion For Fingerprint Exemplars

Tthe Government requests that Defendant be ordered to make himself available for fingerprint exemplars at a time and place convenient to the Government's fingerprint expert. See United States v. Kloepper, 725 F. Supp. 638, 640 (D. Mass. 1989) (the District Court has "inherent authority" to order a defendant to provide handwriting exemplars, fingerprints, and palmprints).

Because the fingerprint exemplars are sought for the sole purpose of proving Defendant's identity, rather for than investigatory purposes, the Fourth Amendment is not implicated. See United States v. Garcia-Beltran, 389 F.3d 864, 866-68 (9th Cir. 2004) (citing United States v. Parga-Rosas, 238 F.3d 1209, 1215 (9th Cir. 2001)). Furthermore, an order requiring Defendant to provide

1    fingerprint exemplars does not infringe on Defendant's Fifth Amendment rights.  See Schmerber

2    v. California, 384 U.S. 757, 770-71 (1966) (the Fifth Amendment privilege "offers no protection

3    against compulsion to submit to fingerprinting"); Williams v. Schario, 93 F.3d 527, 529  (8th Cir.

4    1996) (the taking of fingerprints in the absence of Miranda warnings did not constitute testimonial

5    incrimination as proscribed by the Fifth Amendment).

6    B.    Government's Motion to Compel Reciprocal Discovery

7    1. All Evidence That Defendant Intends to Introduce in His Case-In-Chief

8    Since the Government will honor Defendant's request for disclosure under Rule 16(a)(1)(E),

9    the Government is entitled to reciprocal discovery under Rule 16(b)(1).  Pursuant to Rule 16(b)(1),

10   requests that Defendant permit the Government to inspect, copy and photograph any and all books,

11   papers, documents, photographs, tangible objects, or make copies or portions thereof, which are

12   within the possession, custody, or control of Defendant and which Defendant intends to introduce

13   as evidence in his case-in-chief at trial.

14   The Government further requests that it be permitted to inspect and copy or photograph any

15   results or reports of physical or mental examinations and of scientific tests or experiments made in

16   connection with this case, which are in the possession and control of Defendant, which he intends

17   to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendant

18   intends to call as a witness.  The Government also requests that the Court make such order as it

19   deems necessary under Rules 16(d)(1) and (2) to ensure that the Government receives the reciprocal

20   discovery to which it is entitled.

21   2.    Reciprocal Jencks – Statements By Defense Witnesses

22   Rule 26.2 provides for the reciprocal production of Jencks material. Rule 26.2 requires

23   production of the prior statements of all witnesses, except a statement made by Defendant.  The time

24   frame established by Rule 26.2 requires the statements to be provided to the Government after the

25   witness has testified.  However, to expedite trial proceedings, the Government hereby requests that

26   Defendant be ordered to provide all prior statements of defense witnesses by a reasonable date

27   before trial to be set by the Court.  Such an order should include any form in which these statements

28

are memorialized, including but not limited to, tape recordings, handwritten or typed notes and reports.

**IV**

**CONCLUSION**

For the foregoing reasons, the United States requests that the Court deny Defendant's motions and grant the United States' motion for reciprocal discovery.

Dated: February 22, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

*s/Lawrence A. Casper*
LAWRENCE A. CASPER
Assistant U.S. Attorney

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR0206-H |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| | ) | |
| RUFINO SANDOVAL MORALES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

I, Lawrence A. Casper, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of

UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO: 1) DISMISS INDICTMENT DUE TO IMPROPER GRAND JURY INSTRUCTION; (2) COMPEL DISCOVERY & PRESERVE EVIDENCE; (3) DISMISS INDICTMENT FOR FAILURE TO ALLEGE ESSENTIAL ELEMENTS; (4) SUPPRESS STATEMENTS; AND (4) GRANT LEAVE TO FILE FURTHER MOTIONS AND GOVERNMENT'S MOTIONS TO: (1) COMPEL FINGER PRINT EXEMPLARS; & (2) FOR PRODUCTION OF RECIPROCAL DISCOVERY

on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1.      **Hanni Fakhoury, Esq.**
        **Federal Defenders of San Diego, Inc.**

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

1.      **None**

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 22, 2008.

s/ Lawrence A. Casper
LAWRENCE A. CASPER

08CR206-H